Mr. Barth, you may proceed. Thank you, Your Honors. May it please the court, my name is James Barth. I represent Joe Reinbold in this appeal. We're asking that the trial be remanded for trial because the trial court erred in weighing the giving way to different testimony of the same witness. One of the defendants, Mr. Norris, testified that the reason Mr. Reinbold was not passed along for further consideration in being hired was that he gave a bad phone interview. This directly contradicted statements that were given to his barber who testified that Mr. Norris had said both that Reinbold and Bruce were the main contenders for the position. How do you explain Norris's alleged statement that the decision came down to two candidates that included Reinbold when Mr. Reinbold was not one of the five candidates selected to interview in person for the position? Your Honor, I believe that the explanation lies in the timing. The conversations with his barber were over a period of time when he was going to his haircut, talking a little bit here, a little bit there. The comments that Mr. Reinbold and Bruce say were the main people contending, it may very well have been before final cuts were made. But that actually goes to one of my concerns, which is that this barber's testimony about what Mr. Norris was saying strikes me as very vague and perhaps too vague to undermine what seems to be the uncontested fact that 94 people start out in this process, it's winnowed down to 11 for the phone interviews, and then five proceed for the in-person, and that group of five do not include Mr. Reinbold. So I could well imagine Mr. Norris musing at some point in time that he expected there would be two serious candidates, Mr. Reinbold and Mr. Bicey. But as the process unfolded, that wasn't the way it worked out. There's just so much lack of precision in what the barber says. I don't see how that can be used to counteract what seems to be the undisputed fact that the 11 phone interview people get winnowed down to five, and that's a group decision. That's not just Mr. Norris or just any one person. And Mr. Reinbold doesn't make the cut, maybe for terrible reasons, maybe for reasons of old boy network or favoritism, but I don't see a prohibited reason being advanced on this record. I think that there is, I'm sorry, I didn't mean to cut anybody off. No, no, no, at least you're not cutting me off. I think that there is evidence from which reasonable inferences can be drawn. One of the other committee members noted that despite intentions not being raised or age not being discussed on the phone interview, that Mr. Reinbold was wanting a retirement job. But didn't that respond to Mr. Reinbold himself saying, you know, my last job is either going to be as the baseball coach at IUSB or as, you know, whatever his present job was? He did say that as far as I understand. He did. He did comment that he was wanting to finish at one spot. I think that that has reasonable inferences two different ways. It could very well be saying I plan on retiring and that's what I'm looking for. It could also be I'm committed. This is the place I want to be. It's either going to be with you or I'm going to stick with this next place for as long as that is. I think that those are two reasonable views of the statement. I mean, but you could say that about anybody, you know. Back in 1995, you know, I probably thought of being on the Court of Appeals as my retirement job and I was considerably younger then than I am today. Yes, Judge. But I think that the reason why we look at subjective criterion as suspect, especially when it doesn't have objective backing, is because it is so easy for someone to write off, well, I like this person. And as the Court noted, cronyism is not against the law. But I like this person because he's young and I don't want to deal with somebody who's going to tell me that what I want is different or age. I don't want to deal with having to replace somebody in five years when they retire. Those, it's easy to come up with those subjective, soft reasons to hide away what the law says shouldn't be allowed to be used. Go ahead, Jessica. Thank you. You suggest that the district court impermissibly made a credibility finding when it described Reimbold's poor performance on the phone interview. But did Reimbold put forth any evidence tending to show he did well in the interview? Short answer to that, Your Honor, is no. And I don't think that he could. There was no objective rubric or grading scale that was applied. Unlike in the Tiborsky case from this court from last year where there was a rubric. In this case, there wasn't a rubric. So what is being relied upon for the weight of evidence isn't so much, was it a bad phone interview? Is he's saying there's a bad phone interview and he told somebody else that he was a serious contender. But all the objective things, the wins, the championships, the record of helping students, student athletes over a course of years would support Reimbold. And Mr. Buse does not have that record. Mr. Cooper and Mr. Norris both commented that it was the worst interview they ever participated in. Something to that effect. Isn't that correct? Yes, Your Honor. Yes, Your Honor. Those are the statements that are contradicted by what was apparently told to the barber. And I would suggest and put forth respectfully that that's the purpose that we rely on juries to look through, to watch the people during their testimony, during direct and cross, the back and forth, to see what weight and credibility is given to those statements. In conclusion, if there aren't any further questions, we're asking that this court reverse the trial court's grant to summary judgment and remand for the case to be considered by jury. Thank you. Thank you, Mr. Barth. Counsel, Ms. Martina, you're next. Thank you, Judge. May it please the court. In this case, Mr. Reimbold has brought age discrimination claims against two individuals, Steve Bruce and Tom Norris, who were members of an eight-member hiring committee as a result of the committee's unanimous decision not to advance Mr. Reimbold to the second stage of the interview process for the baseball coach position at Indiana University South Bend. Stage one of that process involved the hiring committee selecting from 94 applicants, just 11 candidates, to have that initial screening interview over the phone. What were the ages of the four other individuals invited to campus for an in-person interview in addition to Mr. Royce? So, actually, those numbers aren't in the record. But I do know from discovery that Mr. Boosie was the youngest. He was 31. And then the other ones ranged from that age to upper 40s. So everyone was kind of in the 30s to 40s range. Counsel, in the application for this position, was age required to be stated on the application? No, I do not believe so. So the way we figured out what the ages were was basically based on the resumes. And if somebody put what their high school or college graduation date was, we just assumed that they graduated high school at 18, graduated college at 22-ish. And so that's how, during the discovery process, we just guessed and educated guests on the ages of the candidates. What were the reasons given as to why Boisie was selected over the other candidates who were invited for in-person interviews? Was he the least qualified on paper in that group as well? Yes. So on paper, in terms of years of experience, he would have been the least qualified. He did, however, check the boxes on that job posting. He did have the requisite high school coaching experience. He did have some experience at the collegiate level. And then he did, overwhelmingly, over the other candidates, he had those skills that the committee highly prioritized. And that was being a leader, having those communication skills, and almost most importantly, being a leader that could develop the student-athletes on the baseball field and off the baseball field in the classroom. And so he demonstrated that he had a plan to work with professors, to work with parents and the other departments on campus to make sure that these students were, first and foremost, successful as students, and then also successful athletes. Is there anything in the record setting forth the objective hiring criteria the university expected the committee to use when selecting the coach? The only thing would be the job posting that would list forth those requirements that it had like an educational requirement, it had an experience requirement, and then it also had the requirements for those soft skills, those communication and leadership skills. So that would be the main document in the record that would show that. You know, one thing that I think is clear from the Barbara's comments that Norris referred to two finalists for the job, and that Reinbold was one of them. Why would Norris be referring to Reinbold at all? If he'd been eliminated after the telephone interview. It's just a mystery, isn't it? It is a mystery. Do we know when the Barbara made that comment? Did the Barbara make that comment during the time that the telephone interviews were taking place? Or did the Barbara make that comment during the time that the final in-person interviews were taking place? Or did the Barbara make that comment when the posting was first listed and the 94 people submitted applications? That's a very good question. And in this record, we simply don't know. Tom Norris testified that he remembered having just one conversation with his Barbara, and that would have been around the time that the hiring decision or maybe shortly after, I want to say, was made. And then the Barbara testified that he remembered having two conversations, but that he sees hundreds of people all the time and wasn't quite sure. And it was two different times during the process. One that was during that interview phase. He wasn't quite sure when, because he didn't know all the steps involved in that process. And then the other conversation was, again, after that hiring or around the time of that hiring decision. So we really, truly don't know when these conversations really took place. I will say that regardless of when they took place, and honestly, regardless of the substance of what Mr. Norris did tell his Barbara, it truly, Mr. Reinbold still has to make that connection. He has to make that connection that Mr. Norris had this discriminatory animus, and that somehow it translated into Mr. Reinbold not being brought back for an on-campus interview. And considering it was a committee of eight, four of those committee members, one of which was Mr. Norris, but three others, did participate in Mr. Reinbold's interview, his phone interview. Each one of them said, two of them said it was the worst interview that they'd ever been a part of. And then the others also said that, you know, he was unprepared. His answers were unimpressive. He didn't have well thought out plans.  And that is the reason why he wasn't brought back. And it was after a conversation amongst the entire committee that that decision was made. And each committee member also said that age was never discussed, that Tom, and there's no evidence that that conversation with the Barbara, even if it did go the way that Mr. Reinbold thinks it did, ever made its way back to any of the other committee members. And at the end of the day, again, it was a unanimous decision to eliminate Mr. Reinbold from consideration after that first step. And then it was, again, another unanimous committee decision or recommendation to Steve Bruce to ultimately hire Doug Busey. And Steve Bruce accepted that recommendation and chose to hire him. And there's just simply no, there's no link there between that conversation or any discriminatory animus of Tom Norris impacting or tainting that committee's process. What about the retirement age comment that Mr. Barth brought to our attention? So, yes. So that remark, I believe it said he was looking for a retirement job. So that was made in notes taken by Scott Cooper. He is the head men's basketball coach. He was one of the committee members. So each committee member had their own set of notes that they took during the process. And so it was, we don't know from Scott Cooper because he was not deposed. And then frankly, in the summary judgment process, it was not in any of his written testimony, what he meant by that comment or why he wrote it. But like you pointed out before, Mr. Reinbold did answer one of the questions in the phone interview was whether or not, what the candidates short-term and long-term career goals were. And Mr. Reinbold answered that he was either going to finish his coaching career at either Clay High School where he was, or at Indiana University South Bend. And so that is the inference to be drawn there, is that he was looking for a retirement job and that he was looking for his final position. He wanted to stay in South Bend. He testified repeatedly that his family is from South Bend. That's where his ties are. He had no intention on leaving South Bend. And so that is where he wanted to end up. And so his speculation that Scott Cooper meant anything else other than that is just insufficient to contradict Scott Cooper's declaration that he didn't consider the candidates ages during the hiring process.  Were shared with the other committee members or that impacted either Mr. Bruce's or Mr. Norris's decisions during that interview process. The other piece that I'd like to talk about is there is a final element to Mr. Reinbold's claim that he must prevail. And he, and that is that any difference in treatment was not rationally related to a legitimate state interest. And he doesn't at all ever in the district court level or at this level until his reply brief say that any difference in treatment was not rationally related to a legitimate state interest. So any argument with respect to that element should be deemed waived. And so he just simply doesn't have anything on that third element. And I see my time is running out. So for those reasons, we would just ask for the court to affirm summary judgment. Thank you. And thanks to both counsel. The case will be taken under advisement. And Mr. Norris has some rebuttal. If I cut you off, do you have some time? He has a little rebuttal time, yeah. I can't hear you. My apologies, I was muted. I believe there is a little bit of time left on the clock. All right, you can use that. I would just note that the reason why the subjective criterion is so susceptible and the reason that age discrimination case like this one, it's really sensitive on circumstantial evidence. There's inferences based on what is said. And just because it's an inference that would go to our favor, that's the way that it's supposed to be drawn. Reasonable inferences are to be drawn in the light most favorable to the non-moving party. It's not speculation. We're not coming up with it out of nowhere. It's based on the statements and the circumstances around which those statements are provided. And the jury is in a much better position than a judge to weigh that. That's been the position of Seventh Circuit for, and most of the circuits for quite some time. And in closing, I would thank your honors for the time today and the flexibility in moving this case ahead of when it was originally scheduled. Thank you. Again, thanks to both counsels.